This is our second case in the morning, Devyn Corporation v. City of Bloomington. We have the appellant, Mr. Kelty and Mr. McGrath, and you've divided your time with the appellee, Mr. Gardner and Ms. Lagrada. Ms. Lagrada is arguing, is that the right way to pronounce your name? Yes. Thank you. You may proceed. And if you want to make eye contact, you will. Good morning. May it please the Court, Thomas Kelty for the appellant. This action was brought to compel the appellee to fully comply with the provisions of the Illinois Tax Increment Finance Act, which requires the filing of annual tax increment finance reports and limits the life of a district. I will address my remarks to account two, seeking an equitable accounting of the financial activity of the district. The Act from its inception required the appellee to annually account for its receipt and expenditure of tax increment revenues derived from the taxing bodies levying property taxes within the district. In 1989, the General Assembly enacted specific provisions calling for municipalities utilizing the benefits of the Act to file an annual report in the format required by the Illinois Comptroller. Copies of those reports prepared and filed by the appellee are in the record found at appendix pages 8-249 through 8-473. The report created by the Comptroller differs substantially from the audit, which is required by the Illinois Municipal Code to likewise be filed on an annual basis. Recognizing the fundamental difference between the audit and the TIF annual report, the Illinois Municipal Code requires in Section 8-8-3.5 that the audit and the Comptroller's annual report be filed separately with the Comptroller. In response to the appellee's motion for summary judgment as to account two, the Court entered an order finding that due to the availability of financial information contained within appellee's audit and its consolidated annual financial report, which is not a statutorily required report, it's simply not required by law, but it is permitted, there was sufficient information available in public documents which the appellant could search regardless of the requirements of the Act. There was absolutely no evidence upon which the Court could reach its conclusion, and there is evidence that the appellee's motion should have been denied. The appellant responded to the appellee's motion for summary judgment as to account two, but did not file a cross-motion. It did not do so because the appellant argued there were material facts in dispute as to whether the reports filed were accurate. The trial court ruled otherwise. Appellee operates under the statutory city manager form of government, of which this Court may and appellant request that you take judicial notice, which confers upon the manager the duty of seeing that the financial activities of the appellee are conducted in accordance with law. In his deposition, the city manager was questioned with regard to the inaccuracy of the 2000 through 2008 reports, to which he responded, and I quote, He, I quote, saw no need to timely file these reports or to prepare them accurately, blatantly disregarding the duties of the dictates of the Ombudsman General Assembly. Appellant lacks an adequate remedy at law by which it can obtain accurate financial reports as required by the Act, from the appellee which refuses to provide them. It is the same inaccurate reports the appellee filed with the comptroller and never sought to correct. The recognized rule of law is that equitable remedies should be denied where there is an adequate remedy at law. Here there is none. Even if there were, an equitable accounting may be ordered where the failure to prepare an accounting is based upon an alleged breach of fiduciary duty as alleged in the appellant's Third Amendment complaint, whose leave to file was denied by the trial court. Under this exception... Counsel, are you indicating that the ledgers that were attached to the annual financial reports, are you saying those were inaccurate? Not ledgers. Okay, so doesn't that provide you with a portion of the information that you would be seeking with respect to an accounting? A portion of it. Okay. With regard to the accounting, the information is there, but it's not in the form of the required annual report, which pulls that information out and requires it to be set forth in an established format that makes it very easy for a member of the public or anyone to understand the financial activity that's taking place within the district. Our expert is... We include our expert's opinion that the information required in the annual report cannot be found in the audit or in the CAFR. Now the CAFR is... It's a consolidated annual financial report, and it's popularly used. The audit is the real key. And there are 14 separate items that are required in the comptroller's report that can be found nowhere in the audit. Thank you, Counsel. Pardon me? Your time has expired. Thank you, Judge. May it please the Court, Pat McGrath for the appellant. Count three of the amended complaint will be the focus of my argument to the Court. Count three sought declaratory judgment finding that certain actions in the administration of the TIF Fund by the city were in violation of the TIF Act. You prevail. Let's assume you prevail. What happens next? So the end result of prevailing would be a determination that there was a substantial surplus. And then what? That money would be ordered. It is our position that that money should be ordered by the Court to be refunded to the overlapping taxing bodies, whether a prior year adjustment by the county clerk or by a check for the city. And then what benefit to you of that result? My client's a taxpayer for both the city and for the 11 overlapping districts, so the money that was deprived from the overlapping districts would reduce its need to levy additional taxes in the future. So there is a property tax savings for my client as a future tax saver. Correct. There's no indication that the taxes were higher because of TIF. I mean, we don't know that. The taxing bodies did what they did, and then the TIF formula siphoned off some of those to be used for development. The tax levy process, Your Honor, calls for a taxing body to pass a levy requesting that the county clerk extend a fixed sum of money on their behalf. And the rate that each individual property owner pays is dependent on the equalized assessed value of the property subject to that rate. The TIF increment is removed from the tax base. But what I'm saying is you're not claiming that the TIF caused you to pay more taxes in the past. Up until the very last levy. It's our contention that the very last levy by the City of Bloomington, levied in 2009 and collected in 2010, was a tax levy that should not have been extended. So that was extra money that the city got that it should not have gotten. But before that, everything was okay? That's correct, Your Honor. Okay. So with regard to Count 3, there's a two-part assessment to arrive at the conclusion that the plaintiff's appellant takes, which is that the city improperly administered the TIF fund with regard to its actions at the end of 2009 and thereafter. The first is to make an assessment of what the estimated date of completion was for the TIF district. The ordinance adopted by the city in 1986 set the estimated date of completion as December 21, 2009. The legislative amendment adopted after 1986, principally a legislative amendment by Public Act 91-0478, was adopted in 1999, afforded TIF districts an opportunity to elect different estimated date of completion, which would be slightly later than that which was provided in the law in 1986. And the issue and argument of both parties is whether that change was self-enforcing, whether that applied retroactively to existing TIF districts or not. A review of the entirety of the amendments made by that Public Act highlight the process that the city would have had to follow if it desired to avail itself of the opportunity to extend the estimated date of completion afforded to it. And in order to do so, the city was required to adopt a municipal ordinance through less formalities than what it otherwise would have to follow to amend the TIF redevelopment plan. But it did have to pass an ordinance in order to change the estimated date of completion. The parties agree that the city never did that. So it's a conclusion the appellant argues that the estimated date of completion remained December 21, 2009. And so you go on to argue then that estimated doesn't mean estimated? Correct, Your Honor. The estimated date of completion represents the most direct statutory authority in the TIF Act to talk about when the TIF districts end. In the absence of some significance to that estimated date of completion, we would have TIF districts that would last infinitely until a city or village or government body decided they wanted to conclude their TIF district. But it says estimated date of completion, not date of completion. It does say estimated date of completion, Your Honor, and the appellant's position on that is that the use of the term estimated was principally to allow for a termination of the TIF district at earlier junctures if a city felt that the intended good of the redevelopment plan had been achieved and there was no further need for the TIF district. So estimated can mean sooner but not later. That is my position, Your Honor. I feel if it was interpreted to merely be an estimate that was not binding on the city, that would create a dangerous policy for the TIF districts where they could last forever. As I explained in the discussion of the tax levy process, the TIF district... Well, forever is less than two weeks, isn't it? Forever is less than... Or two weeks is less than forever. Isn't that what we're talking about here? Well, it's a slippery slope. If two weeks is okay because it's an estimated date, my argument would be that the language would support five years or a year or... That's rather less compelling, however, than when it's two weeks, isn't it? There is certainly a gradient difference between two weeks and infinity. But when looking at the language of the statute, if estimated is interpreted to strictly mean an estimate which is not binding, you open that door for the infinite TIF district, and the TIF district is taking money from other taxing bodies in the form of the increment. So if the TIF district were to be allowed to exist infinitely, it would be depriving other taxing bodies of their ability to tax that increment. But the action took place within the confines, I should say, prior to the estimated completion date, right? Even though it had an impact that went into the following year. Both the actions that we take issue with took place after the estimated date of completion. On December 28th of 2009, after the estimated date of completion, the city adopted its tax levy, which directed the county clerk to collect the taxes we take issue with, which were received in 2010. So the adoption of the tax levy took place after the expiration date? Yes, Your Honor. As well as the entry between the city and others of the contracts, which were the obligations the tax levy money was used to pay. So you argue on appeal that the trial court erred in denying the plaintiff's motion for rehearing with regard to the grant of summary judgment for the defendants as to count three? Yes, Your Honor. What was the basis of your petition for rehearing? The basis of the petition for rehearing, Your Honor, allow me one moment to find my place in my notes here. Off the top of my head, I apologize, Your Honor, I don't recall, but if I could. Was the letter or something from the city manager, then city manager Tom Hamilton or his remarks at a public hearing in November 1986? I'm sorry, Your Honor, I don't have that pleading in front of me. If I could, in the interim between. Well, the reason I assume, I think that's correct, what I just suggested to you. But the reason I ask it is how, what explanation do you have for why that wasn't presented to the trial court at the time of the hearing on the motion for summary judgment, as opposed to what you did, namely lost the motion for summary judgment, then filed a petition for rehearing, arguing that, by the way, Judge, we've got this new evidence we want you to consider. And again, I offer my apologies to the court. My memory on that part of the proceeding isn't as fresh. I've been introduced later into the proceedings, so I wasn't firsthand involved at that juncture. Well, when you have a chance to address this again in rebuttal, and when you do, because you didn't address in your reply brief, I'd like you to address what this court wrote 24 years ago in Gardner v. Navistar International Transportation Corporation to hear what application it might be. I'll quote it to you. Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays. And the interests of finality and efficiency require that the trial courts not consider such late, tendered evidentiary material, no matter what the contents thereof may be. It seems to me, Counsel, that suggests it would have been error of the trial court to have granted your motion for reconsideration in the absence of some compelling reasons why, much less not err to deny it. So when you're back on rebuttal, you can address that. Thank you, Your Honor. So with regard to Count 3 and the estimated date of completion, as I've indicated, that date we feel was the 21st and the relevant action by the city occurred after that date. Namely, December 28th was the big date of the two actions. When considering the city's position and whether the city had the authority to act after the estimated date of completion, one argument that's extended on the city's behalf is the idea that there isn't a prohibition in the TIF Act expressly stating against doing so, working both off the idea that the estimated date of completion is an estimate plus a lack of an affirmative prohibition. The interpretation of the statute in that light, in that argument, would run afoul of Dillon's Rule, which limits the authority of municipalities to act unless there is a statutory grant of authority to act. So the contention that the city can't act because there isn't language saying they can't flips the presumption. The burden lies on the city to establish a basis under the act by which it has been granted authority to take the action it undertook. The third step, or the resolution step, of Count 3 becomes elementary if the court were to accept the plaintiff's contentions both regarding the estimated date of completion and the effect of that date. Similarly, the city's authority to act beyond that. We ultimately contend there is a surplus that should have been refunded   that is rather indisputable if the court takes as correct and agrees with the contention that the city was prohibited from acting both appropriating funds and levying funds for expenditure for TIF purposes after the December 21, 2009 date. As a part of the city's argument with regard to some of these issues of statutory interpretation, the city asserts a waiver argument suggesting that some of the authorities raised in the brief were not adequately brought before the trial court. The crux, the principal issue before the trial court with regard to Count 3 was a lack of authority on the city's behalf to undertake the action it did. There were arguments made, and I've cited them in my brief as instances where it was referred to that the city may have to adopt a coordinance. And the contention of a lack of authority was a theme throughout the handling of Count 3 at the trial court level. Even if the court were to conclude otherwise, I believe it would be an instance where the court in its discretion should exercise review of the issue. The trial court's decision was based on the statute, and to allow the trial court's decision to stand based on a fraction of the statute without the court being able to consider the entirety of the statute would lead to an absurd result. That's particularly with regard to language requiring an ordinance be adopted by the city in order to extend the estimated date of completion of the TIF district. There is a contention that the trial court made in support of its conclusion that the estimated date of completion is merely an estimate that derives from language of the TIF Act which requires notice to taxing bodies by November 1st if the city is going to terminate the TIF district that year. And the court's conclusion or contention was that the November 1st date in the notice would be meaningless if the estimated date of completion was the actual or absolute date of completion. What the court overlooked in that is the possibility that the TIF district could have been terminated at any time sooner. It's the appellant's position that the estimated date of completion is an estimate because the TIF district could have ended in 2004 or 2006. It could have ended at different junctures if the city thought appropriate. The reason for the advance notice is so that the overlapping taxing bodies can consider the impact of the termination of the TIF district. Well, if you're writing a contract or writing a statute and that's the intent, don't you then say shall terminate no later than whatever date you have in mind? Isn't that the argument you're making? And isn't that a rather different term than the estimated completion date which certainly doesn't speak of any prohibition of going somewhat beyond the date? It absolutely is. It's certainly a different language that was used by the General Assembly. And I agree that the language suggested by the court would be more conclusive as to the issue presented before it. And, in fact, the deconstruction you're giving us reads out the term estimated entirely, doesn't it? You're asking us to read the statute as if the word isn't there. I would argue that we do account for the existence of the word estimated in our contention that the TIF district could have been terminated sooner than December 21, 2009. Had the word estimated not been present, it still could have been terminated sooner then, couldn't it? I mean, did the law require that it must go that long? If the law were to be worded to say the date of completion of the TIF district is December 21, 2009, if the estimated word was dropped out entirely, then it would seem inconsistent with the date of completion if the city were to conclude in 2004. In that instance, I would contend the city would have to amend its redevelopment plan to provide an earlier termination date before it could terminate in 2004 or 2007 or at a sooner juncture. I'm reaching the end of my time. Thank you. I want to get educated for a minute. The TIF district means, and this isn't a trick question about standing. The TIF district exists. My school district gets less money from its levy because a portion is sliced off the top to go to TIF. Is that correct? Very slight variation on that, Your Honor. If your school district levied $100,000, the rate calculated to collect that $100,000 wouldn't consider the increment. So if your school district taxed at the same rate every year, it would receive less money. The levy asks for a fixed sum of funds. So what would happen to get that fixed sum of funds is the rate would have to go up in order to collect that because the extra value that is the increment is not a part of the tax base of the school district. So if a home is worth $100,000 the day the TIF district was created, and if it's worth $200,000 five years later, your school district can't tax on that extra $100,000 in value that was generated after the TIF district was created. Would it then be correct to say that school, parks, sanitary, fire districts are going to get the same amount on a yearly basis that they asked for because what they asked for takes into account that a certain amount is taken off the top for TIF. They make an adjustment to account for the fact that you're taking TIF money from them. So long as they have sufficient tax base and sufficient room underneath their maximum rates, they would be able to do so. The statute sets maximum rates for certain taxing bodies. So if they were at or near their maximum rate, they may not be able to make up the difference by increasing the rate. What I want to get educated about is it seems to me, and I have no quarrel with the individual taxpayer complaining about this, but it seems to me as if the taxing bodies are the ones that stand, there's the potential for them to lose revenue or tax dollars because of TIF. And they're the ones that are going to get the refund. And it's speculative in a way as to whether or not their future levies will take into account the refunds that they receive. So your taxpayer, your client, could end up paying more on an annual basis wholly apart from whether any refund is given to the taxing bodies. Is that right? Yes, Your Honor. It's possible, I mean. That is possible, Your Honor. Okay. All right. Thank you, Your Honor. Thank you. May it please the Court. My name is Michelle Legretta. I represent the appellee defendant, City of Bloomington of Illinois. There are five issues that are pending before the appellate court. Those issues include whether this court has appellate jurisdiction, whether the trial court properly granted summary judgment as to Count 3, which is the account for a declaratory judgment on estimated date of completion. Third, whether the trial court properly granted summary judgment with respect to Count 2, requesting an equitable accounting. Four, whether the trial court properly denied plaintiff's motion to file an amended complaint. And five, whether the trial court properly denied the motion for a hearing. First, with respect to the issue of appellate court jurisdiction, as this court is well aware, appellate court jurisdiction is granted under 303A1 in this matter, and under 303A1 an appellant must file a notice of appeal within 30 days of entry of the final judgment, or if a timely post-judgment motion attacking the judgment is filed within the appropriate time, then within 30 days of the entry of the order on that post-judgment motion. Because this wasn't a jury case, Section 2-1203 would be the section that applies to a post-judgment motion, and that says it has to be within 30 days, or if you receive an extension within 30 days, it must be within the time of that extension. Here, the final order entered in this case was on April 29, 2014, and that order granted judgment on the final pending count in this matter that was under the amended complaint, and that was Count 2. Previously, Count 1 had been dismissed pursuant to agreement of the parties. Count 3 had been dismissed in December 10, 2013, pursuant to the grant of summary judgment. And April 29, 2014 was the grant of summary judgment as to Count 2. Well, Counsel, what about the motion for leave to file the second amended complaint? Wasn't that still pending at the time that the court entered that order on April 29? Correct. However, a motion for leave to file an amended complaint under both Anderson v. Resource Economics and Byrd v. Allied is not a motion that attacks the judgment. Once the April 29 order was entered, there were no other remaining causes of action at issue, so it became a final order. This is further supported by the case of Byrd v. Allied Security. In that case, after a motion for summary judgment had been granted, the plaintiff had filed a motion to reconsider, or in the alternative, a motion for leave to file an amended complaint. And there, the court first ruled on the motion to reconsider on October 15 of that year, and then it took the motion for leave under advisement. It did not rule on the motion for leave until November 21,  and then the appellant didn't file it until five days later. There, the appellate court found that there was no appellate jurisdiction because the motion for leave was not directed against the verdict, and therefore it was supposed to have been within the 30 days of the motion to reconsider order. The various cases relied upon by plaintiffs are distinguishable in that, specifically March v. Miller referred to an order on a motion to dismiss. As opposed to a motion for leave. And in that motion to dismiss, the court had granted leave to amend. So the court deemed that, the appellate court deemed that as not a final order. Similarly with Knox v. Switzer, that again was also with respect to a motion to dismiss where the court granted leave and had not yet entered a final order. But here, because a final order had been entered as to count two, and no other causes of action were pending, it likewise was a final order and a motion should have, either a motion attacking the judgment should have been filed by May 29th, or an extension should have been granted on or before May 29th for the notice of appeal. So where would that leave us if the court had then granted the motion for leave to file the amended complaint? So we then arrive here and we have the issues we're talking about today, and then we still have back there going on the amended complaint. Right. Under the various appellate court cases, once that 30 days lapses, any court orders entered after that 30 days is considered a nullity. As far as how Bloomington may have handled that, we may have requested 304A language or filed the notice of appeal at that point in that regard. But as far as previous cases on that point, they have held that after the 30 days, any orders after that 30 days, the trial court basis is considered a nullity. With respect to the second issue, here, three different motions were filed with respect to summary judgment as to count three. All the issues, however, boil down to two issues, and those issues are whether genuine issues of material fact existed, and second, whether or not Bloomington was entitled to judgment as a matter of law. First, there were no genuine issues of material facts with regard to the material facts. As Devin indicated, everyone had an agreement that Bloomington passed its ordinance back in 1986 for the TIF plan. Thereafter, Bloomington received incremental taxes each year. The final year that it received the incremental taxes was in 2010. In November 2, 2009, the Bloomington City Council held a City Council worksheet that reviewed remaining proposed projects. They passed a resolution regarding various projects, setting a priority for those projects in November 2009, and then it approved a number of contracts on December 28, 2009. The final receipt of incremental taxes was in 2010, and it paid those final projects. Devin contends that the estimated date of completion is a termination date. However, here, the TIF Act doesn't describe a specific termination date. It doesn't even refer to the estimated date of completion as anything other than an estimate. Had the legislature intended a mandatory date, it could have very well indicated that there was a mandatory date. It would have removed estimated, but it did not. It only refers to when a TIF plan is closed is after only a series of events. Therefore, it's referred to after the final project costs are paid, after a surplus is distributed, after records and books are closed, then that's when the TIF plan is considered terminated. The TIF Act does not prohibit any payment of redevelopment costs after the estimated date of completion. In fact, there's only one prohibition in the TIF Act regarding something that can't occur after the estimated date of completion, and that is in Section 4B, where the TIF Act says that with respect to contract provisions concerning loan repayment obligations in a contract, those obligations cannot be after the estimated date of completion. So is your position basically that you concede that the city did not follow the statutory language in extending the deadline of the TIF, but by the plain language of the statute for the establishment of the TIF, that it was just an estimated date and not a final drop date? We agree that there was no ordinance that was passed that changed that estimated date of completion, but exactly as your honor indicated, there is nothing in the TIF Act that says it's anything more than an estimated date. There's nothing that prohibits redevelopment project costs from being paid after that date, and there's nothing that prohibits receiving incremental taxes after that date. What if it went on for two years? Here, it carried over into the next year, and then it's over. Right? Is that correct? That is correct. What if it carried on longer than that? Unfortunately, the TIF Act is silent on that issue, your honor. Would we reach a point where it would be unreasonable? If the city took no action to change its redevelopment plan or even speak to it, but just kept doing what they were doing? Under the provisions of the TIF Act, it is unclear what is exactly the termination or how long after an estimated date of completion the TIF plan can continue on. The TIF Act is simply silent. I know the TIF Act is silent. I'm asking what would happen, and I'm asking whether or not you probably know more about these things than the three of us. Right. So, hypothetically, it could go on forever. Correct, your honor. Which is bad, I think. I mean, in the sense that it doesn't sound like planning for that to occur. I mean, this is all about planning for redevelopment and letting people know what's going on. Right. And each year, there is what's called a joint review board, and each year after the TIF reports are filed, the joint review board is supposed to meet and discuss the TIF and discuss whether or not the TIF plan is meeting its objectives, whether everything is in compliance. I believe an issue regarding it continuing for eternity is something that would be addressed within the joint review board. And do you think that, in this instance, it did not continue past the 2010 dates? Correct. In Bloomington? Correct. So, in effect, Bloomington apparently, with or without an end date, let it stop. Correct. So, we don't need to do this anymore. Right. Okay. So, the last incremental taxes that they received were in 2010, and those were incremental taxes that we received from the 2009 lobby. And then the last of the redevelopment project costs were paid during that time. As we indicated, I believe the only money that may still remain in the TIF fund is money that was being held back simply to cover the cost of litigation. Okay. If you lose, what happens? If we lose... Would the city be obligated to refund, to give back to the taxing districts those amounts which had been improper? I mean, if we found that. Had it improperly been used to pay the remaining costs for redevelopment? The TIF Act does not address that issue. The TIF Act doesn't. Right. Under the taxpayer standing, however, taxpayers have standing to seek injunctions moving forward. But as far as remedying for past action, I don't believe that a taxpayer's standing allows them to seek some sort of remedy for the past, merely just an injunction moving forward. So, would I be correct in saying, unless I've missed something, we don't have a lot of cases like this. That would be right? Correct, Your Honor. Is this the first? In my review, with respect to the estimated data completion, in my review of the case law, I did not find any other appellate cases. So, we have no appellate cases and the TIF Act is silent? Correct. In that regard, as we indicated, we believe that the trial court was proper in granting summary judgment with respect to Count 3, which is their account for declaratory judgment. Moving on to the trial court's grant of summary judgment with respect to Count 2 for an equitable accounting, Devin seeks, Count 2 is a cause of action for an accounting. An accounting is something that provides information regarding items as receipts, distributions, balances. Much of Devin's arguments rely on information that's provided in TIF reports. But equitable accounting is not going to provide the type of information that Devin is seeking within an accounting, because as set forth in Polikoff, an accounting merely just provides information on receipts and disbursements. Furthermore, the right to an accounting is not an absolute right. It is one that should only be accorded under equitable principles, as well as it will not be ordered if the circumstances are such as to make the accounting unnecessary or improper. So, to state a cause of action for an accounting, you first must allege that there is an absence of an adequate remedy of law, and then at least one of the followings, either a breach of fiduciary duty, a need for discovery, fraud, or the existence of mutual accounts of a complex nature. Both parties agree that the last one is not an issue here, and Devin only asserted a breach of fiduciary duty, fraud, and a need for discovery. Under Niedberging, however, the court looked at how the trial court had ordered various amounts of discovery, and there they concluded that much of the items that the plaintiff had looked for was available under the discovery provisions of the Civil Practice Act, and that those provisions offered the plaintiff an adequate and complete remedy for discovery of law. And resorting to an accounting inequity was not necessary. I don't want to misstate what Mr. Kelty said, but I think he said you shouldn't have to sift through and transpose and compare and look at a lot of different things. I think he said there ought to be something that's simple and transparent for any taxpayer or anybody to look at, and he contends that the city didn't do that. Let's say the information is basically available if you borrow for it. Do you concede that there could have been different things done by the city to provide clarity and transparency, or do you just say, well, this is the way it's done, and you can find the information if you really look for it? Well, there is a TIF report that's filed with the Illinois State Comptroller, and that's where Ms. Devon indicates that there were deficiencies, because as the record shows and which we do not dispute, is that the former city manager, when he completed the TIF reports, he used non-final numbers. He used numbers that had not yet been audited and had not yet been up to date. So some of those numbers, because they weren't the final numbers, there would be discrepancies between them and the CAFRs, which are the audits, and those audited numbers, there are some discrepancies. The TIF report requires lots of different information. It requires things such as names of projects, the amount spent on projects, a description of the area. The issue, though, with Devon's cause of action is that they're seeking an accounting, and much of that type of information regarding that they're requesting with respect to the TIF report simply just isn't something that would be found in an equitable accounting, because an accounting solely deals with the numbers. In reviewing the CAFRs, they're quite clear they provide the beginning balances, they provide the year-end balances, and those are audited figures. It provides total revenues. And then with respect to the ledgers that were tendered, those ledgers show all of the, I believe they were from 2000 to the close of the TIF plan, show each payment, it shows all of the receipts, the dates that those were received, the dates that they were paid out. So it provides that detail that would have been included in an accounting. Furthermore, it's not just that Devon needed to establish a lack of an adequate remedy of law, they still needed to provide one of the four items, which is breach of fiduciary duty, fraud, need for discovery, and they simply just cannot allege a breach of fiduciary duty, which requires duty, breach, damages. They have yet to establish what those damages are that is related to those TIF reports. With respect to fraud, one would have to establish that statements of material facts were made and those statements were made to induce the plaintiff, and that the plaintiff relied on them and the plaintiff was somehow damaged. They cannot establish that they've somehow been damaged by the use of preliminary numbers in the TIF report as opposed to final numbers. Finally, as discussed under need birding, there is no need for discovery because they've received all that information through discovery, through FOIA. They have the CAFRs, they have ledgers, they have received banner shots, which have all the accounting information. And finally, we likewise would assert that the court's rulings on both the motion for rehearing, and in that case the motion for rehearing, they would have had to establish due diligence, that the evidence was so conclusive it would have changed the trial result. They weren't able to establish due diligence. They weren't able to establish that it was somehow newly discovered. And moving on to the motion for leave to amend, they likewise failed to establish the factors set forth in Loyola Academy, which is that the proposed amendment must concur with effective seating, that the opposing party would be, whether or not the opposing party would be prejudiced, whether it was timely, and whether there were previous opportunities to amend. And as set forth under Martin v. Yellow Cab, this case is quite similar, and there the appellate court affirmed the trial court's denial of the motion for leave because there the plaintiff had waited 20 months, and the proposed amendments wouldn't have cured. And for all the reasons stated before, we request that you affirm the trial court's rulings. Thank you. Mr. McGrath. Oh, yes, certainly. Thank you. I'll try to take these points, kind of, out of my way. I wrote them down. But with regard to the question on the motion for rehearing, I would take the position that the motion for rehearing issues, that the motion is moot. You have to speak up, counsel. I'm sorry. You take the position that what? That the motion for rehearing, that issue is moot. Why? Because the essence of the motion is simply a recognition by the city that there was a 23-year period from the date of creation. Are you withdrawing the argument you made in your brief that the court erred by denying the motion for rehearing? No, Your Honor. So your position is the court erred in doing that? That's correct. Well, what about the question I raised about it being based upon evidentiary material that was well known or should have been obtained prior to the hearing? Your Honor, it's not an evidentiary question. It's a statutory question as to whether or not the city... Counsel, you don't let me be clear. I'm sorry. You presented your arguments and any material in support of your arguments on the motion for summary judgment. It was their motion. Judge, you should deny the motion for summary judgment. Here's why. Judge conducted a hearing, grants the motion. Subsequently, you're presenting the court with an additional reason why the motion for summary judgment shouldn't have been granted. That's in your motion for rehearing. And you're submitting additional stuff in support of your position. Isn't that correct? That's correct, Your Honor. Whatever you call it, the problem is the additional stuff wasn't presented the first time. Why? What's your excuse for not doing that and why should the... How can we say the court erred by denying you the motion for rehearing to present what you should have presented the first time? You heard the quote I read from the Gardner case. That's 24 years ago this court wrote that. And it's been reaffirmed by this court and other appellate courts throughout the state of Illinois repeatedly. It wouldn't... Aren't you arguing against that doctrine of law? We are, Your Honor. Go ahead. The issue, the points that I want to address to the court, and a rhetorical question, why did the city not amend its original ordinance, which would have then allowed it to do, to clearly do what they did? The statute is not clear. What is clear is the law and in case history, and most importantly, Dillon's rule, that when there is any doubt with regard to the power of a unit of government is to be resolved against the action to be taken by the unit of government. That rule goes back over 100 years, Judge. And it's equally or probably more applicable when we're talking about tax issues where the rules of strict instruction. With regard to the jurisdiction, it's our position, as the court heard, that it's not a final order, and even if it is, the revestment doctrine comes into play. And we think that one way or the other, the jurisdiction is clearly with the court. With regard to that matter, the appellee should have just been silent to that issue. What it did was respond. And it agreed to an order that allowed the motion to be filed. 1986 was mentioned. 1986 didn't anticipate 2010. It did not anticipate that the act was going to be amended in 1999. What 1986 said was it's 23 years from the date the ordinance is adopted. And in 1999, it was amended to allow an extension, but only if implemented by the adoption of an ordinance. The city simply did not do that. So they're still stuck with the 23 years from the date of the original adoption or approval of the district. Incidentally, there are... Let's make that a final thought, the incidentally. There are a host of amendments to this act that extend the life of districts, some as far as 35 years. The city of Bloomington is not among that list. So for these reasons, we ask the court to reverse the trial. Thank you, counsel. Thank you. I take this matter under advice.